T.C. Memo. 2004-87

UNITED STATES TAX COURT

GERALD L. AND JESSICA P. FREY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2703-03L.              Filed March 26, 2004.

Gerald L. and Jessica P. Frey, pro sese.

<u>Veena Luthra</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Petitioners filed the petition in this case
in response to a notice of determination concerning collection
action(s) under section 6320 and/or 6330 (notice of
determination).

We must decide whether respondent abused respondent's
discretion in determining to proceed with the collection action

as determined in the notice of determination with respect to petitioners' taxable years 1996, 1997, and 1999. We hold that respondent did not abuse respondent's discretion.

FINDINGS OF FACT

Many of the facts have been stipulated and are so found.

Petitioners resided in Newport News, Virginia, at the time they filed the petition in this case.

During 1996, petitioner Gerald L. Frey (Mr. Frey) received wages of $37,849.88 from Blackhawk Industries, Inc. (Blackhawk Industries), and petitioner Jessica P. Frey (Ms. Frey) received wages totaling $20,799.48 from Smithfield Apartments Corp. (Smithfield Apartments) and Bailey Enterprises, Inc. (Bailey Enterprises). During 1997, Mr. Frey received wages of $45,961 from Blackhawk Industries, and Ms. Frey received wages totaling $21,998 from Smithfield Apartments and Bailey Enterprises. During 1999, Mr. Frey received wages totaling $35,630.92 from the Virginia Department of Transportation (Virginia Transportation Department), Employment Services, Inc. (ESI), and ECPI College of Technology (ECPI College) and unemployment compensation of $1,596.

Although Mr. Frey received wages during the years at issue as well as unemployment compensation during 1999 and Ms. Frey received wages during 1996 and 1997, petitioners did not report such wages and unemployment compensation in any Federal income

tax return (return) that they submitted to the Internal Revenue Service (IRS).

On or about August 17, 1998, respondent prepared a substitute for return for petitioners' taxable year 1996.

On October 30, 1998, respondent issued a notice of deficiency to petitioners with respect to their taxable year 1996. In that notice, respondent determined that for 1996 petitioners had a deficiency of $6,332, an addition to Federal income tax (tax) under section 6651(a)(1)[1] of $729.22, an addition to tax under section 6651(a)(1) and (2) of $421.33, and an addition to tax under section 6654 of $156. Petitioners did not file a petition in the Court with respect to the notice of deficiency relating to their taxable year 1996.

On June 7, 1999, respondent assessed petitioners' tax of $6,332, as well as additions to tax under sections 6651(a)(1) and (2) and 6654 totaling $1,306.55 and interest as provided by law of $751.08, for their taxable year 1996. (We shall refer to those assessed amounts, as well as any interest as provided by law accrued after June 7, 1999, as petitioners' unpaid liability for 1996.)

On June 7, 1999, respondent issued to petitioners a notice of balance due with respect to petitioners' unpaid liability for

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times.

1996.

On November 22, 1999, respondent received from petitioners Form 1040, U.S. Individual Income Tax Return, for their taxable year 1996 (1996 Form 1040). The 1996 Form 1040 that petitioners submitted to the IRS did not contain petitioners' original signatures but contained copies of petitioners' signatures dated November 1, 1999. In their 1996 Form 1040, petitioners reported total income of $0, total tax of $0, and claimed a refund of $3,839.28 of tax withheld. Petitioners attached to their 1996 Form 1040 respective Forms W-2, Wage and Tax Statements (Forms W-2), issued by Blackhawk Industries, Smithfield Apartments, and Bailey Enterprises showing wages, tips, and other compensation totaling $58,649.36. Petitioners also attached to their 1996 Form 1040 a document (petitioners' attachment to their 1996 Form 1040), which stated in pertinent part:

> I, Gerald L and Jessica P Frey, am submitting this as part of my 1996 income tax return, even though I know that no section of the Internal Revenue Code:
>
> 1)    Establishes an income tax "liability" as, for example, Code Sections 4401, 5005, and 5703 due with respect to wagering, alcohol, and tobacco taxes;
>
> 2)    Provides that income taxes "have to be paid on the basis of a return" - as, for example, Code Sections 4374, 4401(c), 5061(a) and 5703(b) do with respect to other taxes; I am filing anyway because I know the government has prosecuted others for failing to file income tax returns by (erroneously) invoking Code Sections 7201 and 7203. Therefore, this return is not being filed voluntarily but is being filed out of fear that if

I did not file this return I could also be (illegally) prosecuted for failure to file an income return for the year 1996.

3)   In addition to the above, I am filing even though the "Privacy Act Notice" as contained in a 1040 booklet clearly informs me that I am not required to file.  It does so in at least two places.

   a)   In one place, it states that I need only file a return for "any tax" I may be "liable" for. Since no Code Section makes me "liable" for income taxes, this provision notifies me that I do not have to file an income tax return.

   b)   In another place, it directs me to Code Section 6001.  This section provides, in relevant part, that "Whenever in the judgment of the Secretary it is necessary, he may require any person by notice served on such person; or by regulations, to make such returns, render such statements, or keep such records, as the Secretary deems sufficient to show whether or not such person is liable for the tax under this title."  Since the Secretary of the Treasury did not "serve" me with any such "notice" and since no legislative regulation exists requiring anyone to file an income tax return, I am again informed by the "Privacy Act Notice" that I am not required to file an income tax return.

4)   With respect to the information I included in my return, I wish to point out that the courts have ruled that:  "A (1040) form with 'zeros' inserted in the space provided...qualified as a return." See **U.S. v. Long**, 618 F 2d 74 (9th Cir. 1980), **U.S. v. Kimball**, 896 F.2d 1218 (9th Cir. 1990) **U.S. v. Moore**, 627 F.2d 830 (7th Cir. 1980), and a Las Vegas bankruptcy court held that "Zeroes entered on a Form 1040 constitutes a return." **Cross v. U.S.**, 91-2 USTC p. 50,318, Banker. L. Rep p. 7404.

5)   Please note that my 1996 return also constitutes a claim for refund pursuant to Code Section 6402.

6)    It should also be noted that I had "zero" income
      according to the Supreme Court's definition of
      income (See Note #1) * * * since I had no earnings
      in 1996, that would have been taxable as "income"
      under the Corporation Excise Tax Act of 1909, I
      can only swear to having "zero" income in 1996.
      Obviously, since I know the legal definition of
      "income", if I were to swear to having received
      any other amount of "income," I would be
      committing perjury under both 18 U.S.C. 1621 and
      U.S.C. 7206.  Therefore, not wishing to commit
      perjury under either statute, I can only swear to
      have "zero" income for 1996.

7)    I am also putting the IRS on notice that my 1996
      tax return and claim for refund can not be
      considered "frivolous" on any basis - pursuant to
      Code Section 6702.  For one thing, there is no
      statute that requires me to make a "self-
      assessment."  Therefore, how can I be charged with
      a penalty for not doing something - allegedly
      incorrectly - that **no statute requires me do at
      all?** * * *

         *        *        *        *        *        *        *

11)   Should the Service disagree with the figures and
      amounts shown on my tax return and claim for
      refund, then I demand an **office or field audit** to
      discuss these differences * * *.  In addition, if
      any "determination" is made that changes in my
      return are warranted, I demand to be notified as
      to where and when I may "inspect" the "text of any
      written determination and any background file
      documents relating to such a determination" as
      provided by 26 USC 6110.

         *        *        *        *        *        *        *

*__Note #1:__ The word "income is not defined in the
             Internal Revenue Code. **U.S. v. Ballard**, 535
             F.2d 400, 404.  But, as stated above, it can
             only be a derivative of corporate activity.
             The Supreme Court has held this numerous
             times. * * *   [Reproduced literally.]

Respondent did not process and file petitioners' 1996 Form

1040 as a tax return. That was because respondent determined that that document was frivolous.

On or about November 13, 2000, respondent prepared a substitute for return for petitioners' taxable year 1997.

On a date not disclosed by the record, respondent issued a notice of deficiency to petitioners with respect to their taxable year 1997. Petitioners did not file a petition in the Court with respect to that notice.

On June 5, 2001, respondent received from petitioners Form 1040A, U.S. Individual Income Tax Return, for their taxable year 1997 (1997 Form 1040A). The 1997 Form 1040A that petitioners submitted to the IRS contained petitioners' original signatures dated May 30, 2001, and copies of petitioners' signatures dated November 1, 1999. In their 1997 Form 1040A, petitioners reported total income of $0, total tax of $0, and claimed a refund of $5,122.83 of tax withheld. Petitioners did not attach to their 1997 Form 1040A any Forms W-2. Petitioners attached to their 1997 Form 1040A a document (petitioners' attachment to their 1997 Form 1040A), which was identical to petitioners' attachment to their 1996 Form 1040 except that petitioners' attachment to their 1997 Form 1040A made references to their taxable year 1997 while petitioners' attachment to their 1996 Form 1040 made references to their taxable year 1996.

Respondent did not process and file petitioners' 1997 Form

1040A as a tax return. That was because respondent determined that that document was frivolous.

On August 13, 2001, respondent assessed petitioners' tax of $8,035, as well as additions to tax under sections 6651(a)(1) and (2) and 6654 totaling $1,509.43 and interest as provided by law of $1,117.83, for their taxable year 1997. (We shall refer to those assessed amounts, as well as any interest as provided by law accrued after August 13, 2001, as petitioners' unpaid liability for 1997.)

On August 13, 2001, respondent issued to petitioners a notice of balance due with respect to petitioners' unpaid liability for 1997.

On or about April 15, 2000, respondent received from petitioners Form 1040 for their taxable year 1999 (1999 Form 1040). In their 1999 Form 1040, petitioners reported total income of $0 and total tax of $0. Petitioners attached to their 1999 Form 1040 (1) respective Forms W-2 issued by the Virginia Transportation Department, ESI, and ECPI College showing wages, tips, and other compensation paid to Mr. Frey totaling $35,630.92 and (2) Form 1099-G, Statement for Recipients of Certain Government Payments, showing unemployment compensation paid to him of $1,596. Respondent processed and filed petitioners' 1999 Form 1040 as a tax return.

On June 15, 2001, respondent issued a notice of deficiency

to petitioners with respect to their taxable year 1999.  In that notice, respondent determined that for 1999 petitioners had a deficiency of $3,356.  Petitioners did not file a petition in the Court with respect to the notice of deficiency relating to their taxable year 1999.

Instead, on September 1, 2001, in response to that notice, petitioners sent a letter to Gwen A. Krauss, Director, IRS Service Center.  That letter stated in pertinent part:

Your Deficiency Notice dated 6/15/01

According to your "Deficiency Notice" of above date (Attachment 1), there is an alleged deficiency with respect to my 1999 income tax of $3,356.00, and if I wanted to "contest this deficiency before making payment," I must "file a petition with the United States Tax Court."  Before I file, pay, or do anything with respect to your "Notice," I must first establish whether or not it was sent pursuant to law, whether or not it has the "force and effect of law," and whether you had any authority to send me the notice in the first place.

    *        *        *        *        *        *        *

Let me further point out that IR Code Sections 6001 and 6011 (as identified in the 1040 Privacy Act) notify me that I need only "comply with regulations."  <u>Nothing in the Privacy Act Notice or in the above statutes informs me that I have to "comply" with, or pay attention to, letters and/or alleged "determinations" sent to me by various and sundry employees of the IRS.</u>

Please note that Section 6212 states that "If the <u>Secretary</u> determines that there is a deficiency in respect of any tax...he is authorized to send notice of such deficiency, etc., etc., etc."  However, the "Notice" I received was not sent by the Secretary, but by Gwen A Krauss, who is identified as being the Director of the IRS Service Center in Chamblee, Georgia, and I have no way of knowing whether she has

been delegated by the Secretary to send out such notices on the Secretary's behalf. So before I do anything at all with respect to your "Notice," I would have to see a Delegation Order from the Secretary of the Treasury delegating to Gwen A Krauss the authority to send out Deficiency Notices.

In addition, I would also like you to send me (or identify for me) the legislative regulations that you claim implement Code Sections 6212 and 6213. I have also attached an excerpt from the IRS Procedures Manual (MT 1218-196, and page P-6-40), which points out that the IRS is required to "make available to all taxpayers comprehensive, accurate, and timely information on the requirements of tax law and regulations." So, pursuant to this provision from your Procedures Manual, I am asking that you identify ("make available") for me the legislative regulations that you claim implement both Code Sections 6212 and 6213, since I have not been able to locate them.

Without your furnishing me with these documents and information, I will be unable to "ascertain" (pursuant to the Federal Crop decision) whether the individual who sent me the Deficiency Notice was authorized to do so, and whether I am legally required to take any notice of it. I am obviously unwilling to "take the risk" referred to by the Supreme Court in the above cited case. [Reproduced literally.]

On February 4, 2002, respondent assessed petitioners' tax of $3,356, as well as interest as provided by law of $520.25, for their taxable year 1999. (We shall refer to those assessed amounts, as well as interest as provided by law accrued after February 4, 2002, as petitioners' unpaid liability for 1999.)

On February 4, 2002, respondent issued to petitioners a notice of balance due with respect to petitioners' unpaid liability for 1999.

On June 21, 2002, respondent issued to petitioners a final

notice of intent to levy and notice of your right to a hearing (notice of intent to levy) with respect to their taxable year 1996 and a separate notice of intent to levy with respect to their taxable years 1997 and 1999.

On or about July 20, 2002, in response to the notice of intent to levy with respect to their taxable year 1996, petitioners filed Form 12153, Request for a Collection Due Process Hearing (Form 12153), and requested a hearing with respondent's Appeals Office (Appeals Office).  On the same date, in response to the notice of intent to levy with respect to their taxable years 1997 and 1999, petitioners filed Form 12153 and requested a hearing with the Appeals Office.  Petitioners attached, inter alia, a document to their Form 12153 with respect to their taxable year 1996 (petitioners' attachment to their 1996 Form 12153) and a document to their Form 12153 with respect to their taxable years 1997 and 1999 (petitioners' attachment to their 1997 and 1999 Form 12153).  Petitioners' attachment to their 1996 Form 12153 and petitioners' attachment to their 1997 and 1999 Form 12153 were identical and set forth, inter alia, the same types of statements, contentions, arguments, requests, and questions that petitioners set forth in petitioners' attachment to their 1996 Form 1040 and petitioners' attachment to their 1997 Form 1040A.  In addition, petitioners' attachment to their 1996 Form 12153 and petitioners' attachment to their 1997 and 1999

Form 12153 stated in pertinent part:

1)      \* \* \* at my CDP hearing I demand that
        the appeals officer have at the hearing
        the delegation order from the **<u>Secretary</u>**
        **<u>of the Treasury</u>** delegating to the
        Operations Manager, Automated Collection
        System the authority to notify me to my
        right for a CDP hearing \* \* \*.

\*      \*      \*      \*      \*      \*      \*

b)      \* \* \* I am requesting that you have at
        the CDP hearing \* \* \* a "delegation"
        order, emitting directly from the
        Secretary, authorizing the IRS employee
        who signed for him (them), the authority
        to impose and file such notices of liens
        against us.

c)      In lieu of having such a "delegation
        order," I am requesting that you have
        the job description of IRS employee(s)
        and the individual who signed the notice
        at issue for him to see if any such
        authority is included in their job
        description.

\*      \*      \*      \*      \*      \*      \*

2)      The document also says that "We have
        made a **<u>demand</u>** for payment of this
        **<u>liability.</u>**"  (Emphasis added)

a)      Please note (as explained in paragraph 4
        herein), we claim we never received such
        a "demand" for payment.

        1)    If you claim otherwise, than I
              demand that you have at the
              CDP hearing the Form Number of
              the document that you claim
              was sent to us as constituting
              the "demand" referred to in
              paragraph 2) above.

        2)    Since the Code Section
              establishing the "liability"

referred to above is also not identified, I am requesting that you specifically identify the Code Section establishing * * *

3)       VERIFICATION FROM THE SECRETARY

I also expect you to have at the CDP hearing "verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." That is the specific statement from the Secretary (or his delegate) that THE LAW <u>requires</u> you to have. **PLEASE BE ADVISED THAT SECTION 6330(c)(3)(A) REQUIRES THAT THIS VERIFICATION BE "PRESENTED" TO US.** Please don't tell us at the CDP hearing that in lieu of having that specific document from the Secretary as required by law to be "presented" to us, that you have some unsigned, IRS transcript. * * * I will not accept any claim of yours that "the courts have held that an unsigned, computer printout satisfies the legal requirements of Code Sections 6320 & 6330," in lieu of "presenting" us with "verification (from the Secretary)...that the requirements of any applicable law or administrative procedure have been met," stated in the law. * * *

4)   Also, pursuant to Code Section 6201(1), before I can owe any income taxes there has to be an assessment based on a "return or list." I filed a return showing no taxes due. Therefore, I don't see how the IRS could have made a <u>lawful assessment</u> from a return showing no income taxes due and owing, unless the IRS prepared <u>another</u> 1040 showing a <u>different amount</u> due. Therefore, at my CDP hearing, I am demanding that the following items be produced and made available to us:

a)   <u>Proof of assessment.</u>
<u>* * * Please have a form 4340 at my CDP hearing certifying that such an assessment has been made.</u>

*     *     *     *     *     *     *

6)       We claim there is no underlying,

statutory liability in connection with the income taxes at issue.

a)   In addition, we are challenging the "existence" of the underlying tax liability as the law (Sec. 6330(c)(2)(B)) and regulation (301.6330-1T-(e)) specifically permit us to do. If the appeals officer believes otherwise, he need only identify for us the Code Section that establishes such a liability * * *.  The * * * IR Code * * * that we will bring to the CDP hearing lists some 40 taxes under the caption "Liability for tax"; however, I cannot find an entry for "income taxes." * * *

\*      \*      \*      \*      \*      \*      \*

b)   The issue of the "existence" of the "underlying tax liability" is certainly relevant as to whether or not we owe the income taxes at issue.  Since the legal "existence" of an income tax liability is such an easy thing to establish * * * why wouldn't the appeals officer simply identify such a Code section if it exists?  The only possible reason for him not doing so, **is if that no such Code section does exist.**

c)   One (nonsensical) excuse the appeals officer might offer * * * is to claim that he is not going to get into this issue because we allegedly got a notice of deficiency and so we had an "opportunity to dispute such a tax liability" as mentioned in Section 6330(c)(2)(B).  However, we never had such an opportunity.  Attached, as Exhibit D, is a copy of the "deficiency notice" [1999] we received.  It was prepared and sent out by Gwen Krauss who is identified as Director of the Customer Service Center, Chamblee Georgia.  However, Code Section 6212 provides that it is "the Secretary" who "determines that there is a deficiency"

and that "he is authorized to send such notice." * * * Therefore, after receiving those Deficiency Notices from Gwen Krauss * * * we wrote her * * * asking her to supply us with her delegation of authority from the Secretary to send out such Notices (pursuant to Code Sections 7701(11)(B) & 7701(12)(A)(i)), and she never answered our letter. **We have since received proof that Gwen Krauss has no such delegation of authority.** Therefore, the Deficiency Notices we received from her were <u>invalid</u> - and we are barred from petitioning Tax Court from invalid Deficiency Notices. Beside, we are not challenging the "amount" of the alleged "deficiency": we are challenging its "existence," as a matter of law. However, since Tax Court is not a court of law (See <u>Freytag v. C.I.R.</u>, 11 S. Ct. 2631 * * * the Tax Court would have no jurisdiction to consider the legal question of whether or not the Internal Revenue Code establishes an income tax "liability" as a matter of law.

 *      *      *      *      *      *      *

7)      We claim there is no statute requiring us "to pay" the income taxes at issue.

Another relevant issue is "Whether or not there is a statute requiring us 'to pay' the income taxes at issue?" Code Section 6321 provides that only when one fails "to pay any tax" can there be "a lien in favor of the United States." Therefore, before there can be a "lien in favor of the United States" there must be a statutory requirement "to pay" the income taxes at issue. The Index of the Code we will bring to our CDP hearing contains a Section entitled "Payment of tax." (Attached as Exhibit H) It contains over 60 entries. * * * however, <u>there is no entry we can find for "income taxes."</u> It is therefore our belief that there is no law requiring us "to pay" income taxes, and this certainly is a "relevant issue" that is appropriately raised at a CDP hearing - since, if the appeals officer can not identify any statute that requires us "to pay"

income taxes, **how can he approve an IRS lien on our property in connection with a tax the payment for which he can not find shown in any law?**

    \*      \*      \*      \*      \*      \*      \*

    8)   We maintain that there is no law that authorizes the IRS to claim that we owe more in income taxes \* \* \* than the "zeros" we reported on our income tax returns for those years [1996, 1997, and 1999].

    \* \* \* Section 6201(a)(2)(A) further provides that with respect to taxes "payable by stamp," the Secretary is authorized "to estimate the amount of tax which has been omitted to be paid" by stamp. However, we cannot find any provision in Code Section 6201 or any other Code Section that authorizes the Secretary (let alone the IRS) to similarly "estimate the amount of tax" which we allegedly omitted from our 1996[, 1997, and 1999] tax returns. Therefore it is our contention that no law authorizes the Secretary (let alone any IRS agent) to determine that we owe more in income taxes than the "zeros" we reported on our 1996[, 1997, and 1999] income tax returns. \* \* \*

    \*      \*      \*      \*      \*      \*      \*

    This is also to remind you that I will be tape recording the CDP hearing and I will have a court reporter present. I will also have a witness present. [Reproduced literally; fn. refs. omitted.]

On October 21, 2002, the settlement officer sent a letter to petitioners with respect to their taxable years 1996, 1997, and 1999. That letter stated in pertinent part:

Your Collection Due process appeal request has been assigned to me for consideration.

I will contact you as soon as I am able to review your file and determine if we can resolve your case by correspondence or phone in lieu of a personal conference. If a personal conference is needed, I will schedule a meeting with you or your representative.

\*      \*      \*      \*      \*      \*      \*

In order for your appeal to be considered, you must be in [sic] current in filing tax returns.  If you have not done so, please file the delinquent return(s) immediately. \* \* \*

On October 23, 2002, the settlement officer sent a letter to petitioners with respect to their taxable years 1996, 1997, and 1999.  That letter stated in pertinent part:

**HEARING IN PERSON OR BY TELEPHONE**

- **IN PERSON**  should you prefer to discuss the case in person, I have scheduled a conference for **November 6, 2002 at 10:00 AM** \* \* \*

- **TELEPHONE HEARING**  If you prefer a telephone hearing, please call me at \* \* \*

- **CONFIRM WITHIN 7 DAYS**  please call me within 7 days of the date of this letter to confirm whether you will appear.  If the date is not convenient, I will be happy to reschedule the hearing.

\*      \*      \*      \*      \*      \*      \*

**Please see the tax transcripts and important information enclosed concerning your hearing.**

On October 31, 2002, the settlement officer sent a letter to petitioners with respect to their taxable years 1996, 1997, and 1999.  That letter stated in pertinent part:

This letter is to confirm that your hearing date is changed to November 20 at 10:00 AM. per your request.

\* \* \* Our records also indicate that you have not filed your 1998 and 2001 income tax returns.  If you have filed them, please provide your copy of the returns.

On November 13, 2002, petitioners sent the settlement

officer a letter.  That letter stated in pertinent part:

>    We have requested a Collection Due Process Hearing
> as provided for in Code sections 6320 & 6330 * * *,
> which is scheduled for November 20, 2002.  We are
> writing to make clear our position as relates to the
> harassment, threats of seizures and liens by the IRS.

>    Based on these omissions we are contacting the
> Taxpayer Advocate for resolution of these options.

>    Further, we are requesting an impartial officer,
> for the up coming Due Process Hearing.  This request in
> based on the partiality of the current officer in
> indicating that we must be current in filing tax
> returns for our appeal to be considered.  This is
> blatantly false. * * *

>    We intend to record the hearing and have a witness
> in attendance.

>        *       *       *       *       *       *       *

>    It is clear that before any appeals officer can
> recommend the seizure of any property pursuant to Code
> Section 6331 certain elements have to be present.  For
> one thing (pursuant to that statute) that person has to
> be statutorily "liable to pay" the taxes at issue, and
> only after he "neglects or refuses to pay the same
> within 10 days after notice and demand," can his
> property be subject to seizure.  Therefore, apart from
> the appeals officer having to identify the statute that
> makes me "liable to pay" the taxes at issue, he needs
> to have a copy of the **statutory** "notice and demand"
> which I "neglected" and "refused" to pay.  In addition,
> we can't be "liable" to pay an income tax, if the tax
> in question has never been assessed against me as
> required by Code Sections 6201 and 6203.  So we will
> need to see a copy of the record of our assessments.
> And since (as provided by Code Section 6201(a)(1) and
> IRS Transaction Code 150) all assessments have to be
> based on filed returns, **I will have to see a copy of
> the return from which any claimed assessment is based.**
> In lieu of producing these specific documents
> "verification from the Secretary (of the Treasury) that
> the requirements of any applicable law or
> administrative procedure have been met," will be
> acceptable.  But the appeals officer better have either

the specific documents as identified above, or "verification from the Secretary." If the appeals officer cannot produce neither document, than no Due Process Hearing should be scheduled until he has those documents in hand. If the appeals officer recommends "enforcement of collection action including levy," without having produced these specific documents, then it will be obvious that the appeals officer **is simply attempting to thwart and circumvent the Code Section 6330 in order to enable the IRS to continue its practice of making the illegal seizures uncovered by the Senate Finance Committee * * *** which **THE "DUE PROCESS HEARING" was designed to eliminate**.

Summarizing: We requested a "Due Process Hearing" as outlined in Form 12153. We are "challenging the appropriateness of (the) collection action" as specified in 6330(c)(2)(A)(ii) since the IRS denied all of our requests for the initial "examinations" and "interviews" as provided for in Publications 1 & 5. In addition, no lien for taxes pursuant to Code Sections 6321 and 6322 is possible because no valid, underlying assessment was ever made. In addition, we never received the <u>statutory</u> "notice and demand" for payment of the taxes at issue as required by Code Sections 6203, 6321, and 6331. If the appeals officer is going to claim that a particular document sent to me by the IRS was a "Notice and Demand" for payment, then I am requesting that he also provide me with a T.D. or Treas. Reg. which identifies that specific document as being the official, <u>statutory</u> "Notice and Demand" for payment.

In addition, we are "challenging the existence of the underlying tax liability" as we are authorized to do in Code Section 6330(c)(2)(B). In addition, we did not receive a (valid) notice of deficiency in connection with any of the years at issue. We are also requesting that the appeals officer have at the "Due Process Hearing" a copy of the "Summary Record of Assessment" (Form 22 C) together with the "pertinent parts of the assessment which set forth the name of the taxpayer, the date of the assessment, the character of the liability assessed, the taxable period, and the amount assessed" as provided for in Treas. Reg. 301.6203-1.

Also you are reminded that the Section 6330(c)(1)

**REQUIRES** you to have "verification from the Secretary (or someone with <u>delegated authority</u> from him) that the requirements of any applicable law or administrative procedures have been met."  So unless you have, at the very least, that document, you should not even schedule a Due Process Hearing. * * *  [Reproduced literally; fn. ref. omitted.]

On November 16, 2002, petitioners sent a letter to "Internal Revenue Service Appeals Office Supervisor".  In that letter, petitioners stated in pertinent part:

This is to indicate irregularities in our requested Due Process Hearing.  According to title 26 sections 6320 and 6330 only a single year is at issue for each hearing/appeal.  Yet we are confronted with a partial (prejudiced) appeals officer for the following reasons:

1.    Multiple years of [sic] combined into a single session, we are only allotted one hearing/appeal per year in question.

2.    The hearing/appeals officer is making demands outside of sections 6320 and 6330 regarding "filings must be current".  Which is blatantly incorrect and harassing.

On November 20, 2002, respondent's settlement officer held an Appeals Office hearing with petitioners regarding the respective notices of intent to levy with respect to their taxable year 1996 and their taxable years 1997 and 1999.  James Cain accompanied petitioners to the Appeals Office hearing.  The settlement officer did not allow petitioners to make an audio recording of the Appeals Office hearing.

On November 26, 2002, the settlement officer sent a letter to petitioners (settlement officer's November 26, 2002 letter) with respect to their taxable years 1996, 1997, and 1999.  That

letter stated in pertinent part:

> This letter is pertaining to your letter dated 11-13-2002 and the hearing on 11-20-2002.  I will attempt here to address the points raised in your appeals request and also discuss those matters that can be considered under this process.
>
> Section 601.106(b) of the Regulations and Internal Revenue Manual Section 8122.5 provide that the Appeals Division of the Internal Revenue Service cannot consider arguments based on moral, religious, political, constitutional, conscientious or similar grounds.  Formal appeal procedures do not extend to these types of arguments.
>
> On the issue of impartiality, the statute defines impartiality as "prior involvement with respect to the same unpaid tax."  You have not alledged [sic], and I, the Settlement Officer have had no such prior involvement with your unpaid tax liability.  With regards to your request of the delegation authority of an IRS official, please see the attachment listing court cases showing the courts presume that the IRS official(s) have properly discharged their official duties if there is no clear evidence to the contrary. The burden of proof is upon you to prove that I am not an impartial officer.
>
> Your 1996 and 1997 taxes have not been discharged by the Bankruptcy Court.  You can contact your bankruptcy attorney for more information.
>
> Your request for appeal on form 12153 is a Collection Due Process (CDP) Appeals.  The three key points that Appeals can consider in a CDP hearing involve items such as those listed below:
>
>> 1.  Applicable administrative procedures
>>
>> 2.  Relevant issues such as innocent spouse, collection alternatives and underlying liability.
>>
>> 3.  Efficient collection measures versus intrusiveness.
>
> Based upon a review of your case file, I find no error

in the part of the Service in sending you the proper notices of an outstanding liability. The records indicated that notices were issued for all of the years reflecting a balance due and asking you either pay in full or call the IRS to discuss payment arrangements. To date, no agreement has been instituted.

The underlying liability appears to be correct. The assessments were based on your income and withholdings. You have not pointed to any errors and you have been unwilling to discuss collection alternatives which include full payment, monthly payment, offer in compromise etc.

Please respond within 2 weeks of the date of this letter if you have valid issues or want to propose a payment resolution. If I do not receive a timely response, I will proceed with the issuance of a decision letter that will sustain the levy action.

On November 27, 2002, the IRS Team Manager for Area 2, General Appeals, wrote a letter to petitioners. That letter stated in pertinent part:

This is in response to your letter dated November 16, 2002 that was addressed to this office. I apologize for not responding earlier but I have been away from the office.

In your letter you are concerned about the fact that the Settlement Officer who met with you considered more than one year (return) at the meeting and that she asked about subsequent filings of Federal tax returns. You also ask that this matter be reassigned. There is nothing wrong with the Settlement Officer's handling of either of these items. I, therefore, will not reassign this matter to another Appeals or Settlement Officer.

There is nothing wrong with the Settlement Officer considering all of the tax periods before Appeals at one hearing. In addition, taxpayers must be current in the filing of their Federal tax returns before we can offer collection alternatives to help them. Thus, the Settlement Officer was merely asking about subsequent filings to see if she could offer collection alternatives to you for the amounts owed in the periods

under our jurisdiction.  Both actions are appropriate.

In addition, I would urge you to "step back and look at the course of action" you are taking.  The returns you have filed showing nothing but zeros, and the arguments you have made, have no merit whatsoever.  The arguments you are making are frivolous and make no sense.  In fact, if you pursue these arguments in the courts, the Court will, in all probability, and should, assert it's own penalty for filing a frivolous lawsuit.  The court cases clearly support the Service's position on the issues you raise and indicate that the courts are tired of these types of illogical issues.

I strongly urge you to move away from the destructive path you are following, file proper tax returns as required by law, and make arrangements to pay the taxes you owe for the schools you attend, the roads you ride on, the military that defends you, the courts that protect your legitimate rights, and the freedoms you enjoy.  Please look at the arguments you are making and ask yourself if they make any sense.  Read the court cases cited by the Settlement Officer in the attachment (copy attached) to her letter to you dated November 26, 2002 and evaluate the merits of the arguments you are making.  If you do not take steps to correct the situation, it will become more and more burdensome with larger, unpaid liabilities increased by interest and penalties.

I cannot recommend that you seek the advice of an expert.  However, if you go to any reputable Attorney or Certified Public Accountant in your area, I am confident that they will tell you that your arguments are not correct and they will recommend that you quickly take corrective action.  Neither the IRS, nor the Courts, nor the Congress, nor any reputable professional will support the arguments you are making.

My comments are not intended to offend you in any way.  They are made out of my concern for individuals and intended to provide you with assistance.  I hope this addresses the concerns contained in your letter dated November 16, 2002.

Finally, I have enclosed a copy of a relatively new court case (Steven R. Smith, United States District Court of Nevada, 2002 TNT 223-17) in which the taxpayer

makes arguments similar to those you have made about Delegation Orders, etc.  As you can see, the Court decides the case in favor of the Government.

On December 10, 2002, in response to the settlement officer's November 26, 2002 letter to petitioners, petitioners sent a letter to the settlement officer (petitioners' December 10, 2002 letter).  Petitioners' December 10, 2002 letter stated in pertinent part:

> In response to your letter of November 26, 2002, and based upon your invitation to do so, we raise these valid issues in regard to your statements and exhibits:
>
> 1.   We did not raise any arguments based on moral, religious, political, constitutional, conscientious or similar grounds, so we will not help you to pretend that we did.
>
> 2.   On the issue of impartiality, your letter of November 26th proves that you are NOT impartial to the proposed collection action:
>
>> a.)  We did not raise any arguments whatsoever.  We asked for the documents that the laws describe, which must be present before a determination can be made by you to proceed with collection by distraint.
>
> We cite as a valid issue:  The Statute, IR Code 6330(c)(3) entitled "**Basis for the determination.**  The determination by an appeals officer under this subsection shall take into consideration-A.) the verification presented under paragraph (1),; B.) the issues raised under paragraph (2), which is "any relevant issue relating to the unpaid tax or proposed levy"...
>
>> b.)  You state * * * "Based upon a review of your case file, I find no error in the part of the Service in sending you the proper notices of

an outstanding liability", yet, you do not name by what Statute we are made liable and you do not present for us the documents which support the assessments with the authority of the Service employees that were involved in making such assessments. You state that notices of balance due were issued... Well, IR Code Section 6331 cannot apply to us until we have neglected or refused to pay 10 days following the Notice and Demand for Payment. Seven Statutes and various IRS Publications refer to the requirement for the Notice and demand for payment. We find no authority referring to a "notice of balance due". We did not receive a statutory Notice and Demand for payment.

c.) You state in your letter * * * "The underlying liability appears to be correct. The assessments were based on your income and withholdings." The underlying liability is based upon what statute? Where did you find a liability for the income tax in the Internal Revenue Code? * * * we are contesting not only the existence and the amount of the underlying liability for the taxes and penalties at issue, but, also the authority of the Revenue Officers who changed our returns and who sent out the Final Notice giving rise to our opportunity to a Collection Due Process Hearing - our right to a fair and impartial hearing conducted by an impartial appeals officer who has fulfilled the requirement of the investigation as provided for in IR Code Section 6330(c)(1). If you did indeed conduct that impartial investigation, you should be able

to provide us with the documents you inspected to verify the validity and accuracy of the assessments. * * * We have requested the documentation that the law provides that we may see.

d.) Further, the exhibits attached to your letter are totally irrelevant to our case. They, too, point to your bias toward the government. First of all, the definition of Gross Income does not make one liable for the tax. The issue of the Sixteenth Amendment of the Constitution is not a relevant issue to be raised when all we are asking for is proof that the verification from the Secretary requirement has been fulfilled; that the Notice and Demand for payment requirement as been met; that the assessments are valid and accurately determined and recorded pursuant to some statute by authorized Internal Revenue Service personnel; and, that you have personally acquired verification from somebody other than yourself that all of the administrative procedures and applicable laws have been met. Verification means, a formal written statement. * * * We are in the dark as to what happened on our case, as all of the notices came without reference to any delegation orders or other legal basis for their issuance. Many of them were not even signed! Why wouldn't you want us to see the authority for these notices if indeed they are "Statutory", as you claim them to be?

3. Finally, you stated in your letter that we have not pointed to any errors and that we have been unwilling to discuss collection alternatives...and, then you threatened to

proceed with an issuance of a letter that will sustain the levy action. We cannot fathom what premise you found to base those statements on. It is absurd! You have not provided one document required of you by the law, and, until you do, you have nothing more than a **wish** for our property. Here are the errors you have ignored thus far that we have clearly outlined in previous correspondences and at our "Collection Due Process Hearing":

A.) The FINAL NOTICE we received was not sent out by the Secretary or his delegate. * * *

B.) We did not receive the Statutory Notice and demand for the unpaid tax from the Secretary or his delegate. * * *

C.) The assessments were not made by authorized IRS personnel. We know this because no where in the Code is there any mention of IRS agents having the authority to make a return for income taxes, and no where in the Internal Revenue Manual does it speak of the authority of IRS agents to make 1040 Forms or to do anything with respect to returns of income tax. * * *

D.) Another very relevant issue we have raised and that goes to prove the fact that you have not been impartial to the proceedings thus far is that we have asked for you to cite the Statute in the Internal Revenue Code that provides for the payment of the income tax. Now, whether or not there is a law that requires the payment of the income tax cannot be deemed frivolous or merit less. * * * [Reproduced literally.]

On November 5, 2002, John W. Raymond (Mr. Raymond), an attorney, sent a letter (Mr. Raymond's November 5, 2002 letter) to the settlement officer with respect to petitioners' chapter 7

bankruptcy case.   That letter stated in pertinent part:

> Reference the attached letter dated October 21, 2002 which you sent to Gerald and Jessica Frey.  Be advised that Gerald and Jessica Frey filed a Chapter 7 Bankruptcy, Case No. 02-51961-DHA, in the United States Bankruptcy Court, Eastern District of Virginia, Newport News Division, on July 3, 2002.  Internal Revenue Service was a listed creditor and was sent Notice of the bankruptcy filing by the bankruptcy court.
>
> Debtors received their bankruptcy Discharge on October 10 [sic], 2002.  (copy of Order attached) Their liability for tax debts for calendar year 1996 and 1997 were discharged in the bankruptcy.

The "bankruptcy discharge" referred to in Mr. Raymond's November 5, 2002 letter is an order dated October 12, 2002 (U.S. Bankruptcy Court's October 12, 2002 order) of the United States Bankruptcy Court, Eastern District of Virginia (U.S. Bankruptcy Court).  That order stated as follows:

> It appearing that the debtor(s) is/are entitled to a discharge,
>
> **IT IS ORDERED:**
>
> The debtor(s) is/are granted a discharge under section 727 of title 11, United States Code * * *.

The U.S. Bankruptcy Court's October 12, 2002 order further stated:  "**SEE BACK SIDE OF THIS ORDER FOR IMPORTANT INFORMATION**". The back side of that order stated in pertinent part:

> Debts that are Not Discharged
>
> Some of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are:
>
> a.  Debts for most taxes;

On December 9, 2002, Mr. Raymond sent a letter to an IRS

bankruptcy specialist (Mr. Raymond's December 9, 2002 letter).

That letter stated in pertinent part:

> You and I discussed the above matter on November 19, 2002.  You informed me that the 1996 and 1997 taxes had not been discharged in the Freys' bankruptcy as a substitute return had been filed by the IRS for the Freys and the Freys did not file the returns until November 13, 2000.  The Freys state that they filed the returns prior to November 2000.
>
> The Freys inform me that they received the 09-20-1999 Notice Number CP 504 on September 30, 1999.  The Notice had been mailed to a prior address so the Freys did not get it for ten days.  Mr. Frey called Mrs. Lee (as noted on page two of exhibit A) of the IRS and was informed by Mrs. Lee that the IRS had no returns for 1996 and 1997.  Mrs. Lee advised the Freys to mail the returns to IRS, Attn:  ASFR, Philadelphia, PA 19255.
>
> The Freys had previously filed the returns but complied with Mrs. Lee's directions.  The returns were still packed with their household goods because of the Freys' move.  The Freys found the returns (copies attached) dated them 11-1-99 and mailed the returns to the ASFR address given by Mrs. Lee.
>
> The Freys received nothing further from the IRS until 2001 when the Freys were advised that the IRS had not received the 1997 return.  The Freys dated the 1997 returns 5-30-01 and mailed them to the IRS.
>
> It appears to me that the taxes should have been discharged in the bankruptcy based on the 1999 filing date.

On January 14, 2003, the IRS bankruptcy specialist to whom Mr. Raymond had sent Mr. Raymond's December 9, 2002 letter sent a letter to Mr. Raymond.  That letter stated in pertinent part:

> This is in regards to correspondence we received on December 11, 2002.  In your correspondence you provided copies of tax returns for years 1996 and 1997. I have reviewed the information you have provided and have made these determinations base[d] on the

information.  Tax year 1996 will be processed as the
original filed return and if excepted [sic] as filed,
there will not be any balance due.  The tax return 1996
that you provided shows and [sic] overpayment of
$3,839.28.  The Refund Expiration Date for 1996 is
April 15, 2000, therefore, the above-mentioned debtor's
will not receive the overpayment.  The information
provided for tax year 1997, I could find no evidence
that the return was filed or received prior to the date
that Internal Revenue Service made the assessment of
August 13, 2001.  Tax year 1997 still remains to be
nondischargeable as we had determined at discharge.

On January 23, 2003, the Appeals Office issued to

petitioners a notice of determination with respect to their

taxable years 1996, 1997, and 1999.  That notice of determination

stated in pertinent part:

**Summary of Determination**

The determination of the Appeals Office is to sustain
the decision to issue the Final Notice of Intent To
Levy/Seizure.  The assessment is valid and the actions
were appropriate.

You did not respond to this office's request for
information and made no proposals to resolve the
delinquent liability.  The case is being returned to
the Compliance Office for appropriate collection
actions.

An attachment to the notice of determination stated in pertinent

part:

**Summary of the issues and brief back ground:**

* * * You filed a timely request for a hearing with
Appeals under the provisions of IRC 6630 concerning the
appropriateness of propsong a levy action to secure
payment for the above listed tax liabilities [with
respect to petitioners' taxable years 1996, 1997, and
1999].  You claimed your gross income was not taxable
and your tax assessments were illegal and not valid.  A
hearing was held with you on 11-20-2002.  The hearing

was terminated when you claimed the Settlement Officer had no authority to conduct the hearing. The issues you raised were later responded by correspondence from the Settlement Officer and the Appeals Team Manager

**Verification of Applicable Law and Administrative Procedures**

With the best information available, the requirements of various applicable law or administrative procedures have been met.

Internal Revenue Code (IRC) Section 6331(d) requires that the Internal Revenue Service (IRS) notify a taxpayer at least 30 days before a Notice of Levy can be issued. The tax transcript shows that this notice was mailed to you * * *

    *     *     *     *     *     *     *

You were given the opportunity to raise any relevant issue related to the unpaid tax of the proposed levy at the hearing * * *

This Settlement Officer has had no prior involvement with respect to this tax liability.

**Relevant Issues Presented by the Taxpayer**

Records show you filed the 1996, 1997 and 1999 tax returns claiming zero income even though you attached forms W-2 with the returns showing your gross income * * *. The tax assessments were made based on these incomes. The Final Notice pertaining to the unpaid balance of these tax periods was sent to you on 06-20-2002. You were also advised by the Settlement Officer that the 1996 and 1997 tax liabilities were not discharged by the bankruptcy court. You made frivolous claims such as the IRS agents had no authority to make income tax assessments, the gross income were not taxable and the assessments were illegal.

You were provided with the tax transcripts demonstrating the fact of assessment. The transcripts show the same essential information found on a Form 4340, Certificate of Assessments and Payments. * * *

    *     *     *     *     *     *     *

Under Section 6330(c)(2)(B), neither the existence nor the amount of the underlying tax liability can be contested at an Appeals Office hearing unless the taxpayer did not receive a notice of deficiency for the tax in question or did not otherwise have an earlier opportunity to dispute such tax liability. Records indicated the notices of deficiency were mailed to you * * *. You received a notice of deficiency, but yet failed to file a petition for redetermination with the Court. Therefore, your issue of the underlying tax liability cannot be considered by the Appeals Office under the CDP appeal.

**Balancing Efficient Tax Collection with Concern Regarding Intrusiveness**

Appeals has verified, or received verification, that applicable laws and administrative procedures have been met; has considered the issues raised; and has balanced the proposed collection with legitimate concern that such action be no more intrusive than necessary by IRC Section 6330(c)(3).

Collection alternatives include full payment, installment agreement, offer in compromise and currently uncollectible due to financial hardship. At the hearing and subsequent correspondence, you did not raise a spousal defense or challenge the Compliance's proposed levy action by offering a less instrusive collection alternative. As of this date, you have not provided the information for us to determine your ability to pay and submitted no resolution to your tax liability.

The Appeals Office believes that the Compliance Office's decision to issue the Final Notice was appropriate and sustains the action in full. The case is being returned to Compliance for appropriate collection actions. [Reproduced literally.]

On February 20, 2003, petitioners filed with the Court a petition for review of the notice of determination with respect to their taxable years 1996, 1997, and 1999 and attached to the petition certain exhibits. The petition and most of those

exhibits contained the same types of statements, contentions, arguments, and questions that petitioners set forth in petitioners' attachment to their 1996 Form 1040, petitioners' attachment to their 1997 Form 1040A, petitioners' attachment to their 1996 Form 12153, petitioners' attachment to their 1997 and 1999 Form 12153, and the various letters described above that petitioners sent to the IRS with respect to their taxable years 1996, 1997, and 1999.

On May 29, 2003, the Court issued an Order (Court's May 29, 2003 Order) in which, inter alia, the Court indicated that it had reviewed the petition and the exhibits attached thereto and found the petition and certain of those exhibits to contain statements, contentions, arguments, and questions that the Court found to be frivolous and/or groundless.  In that Order, the Court reminded petitioners about section 6673(a)(1).

OPINION

A taxpayer may raise challenges to the existence or the amount of a taxpayer's underlying tax liability if the taxpayer did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B). Where the validity of the underlying tax liability is properly placed at issue, the Court will review the matter on a de novo basis.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

The record establishes that respondent issued to petitioners respective notices of deficiency relating to their taxable years 1996, 1997, and 1999[2] and that they did not file a petition with the Court with respect to any of such notices.  On the instant

---

[2]With respect to petitioners' taxable year 1996, the transcripts of account that a representative of respondent prepared relating to that year reflected that respondent issued a notice of deficiency to petitioners with respect to their taxable year 1996.  With respect to petitioners' taxable year 1997, the transcripts of account that a representative of respondent prepared relating to that year did not reflect that respondent issued a notice of deficiency to petitioners with respect to their taxable year 1997.  However, the revenue agent who testified on behalf of respondent at the trial in this case indicated that transcripts of account do not necessarily reflect such information.  Indeed, although the record in the instant case contains a copy of the notice of deficiency that respondent issued with respect to petitioners' taxable year 1999, the transcripts of account that a representative of respondent prepared relating to that year did not reflect that respondent issued such a notice to petitioners.  The notice of determination with respect to petitioners' taxable years 1996, 1997, and 1999, as well as the settlement officer's history sheet or case activity records relating to those years, reflected that respondent issued respective notices of deficiency with respect to those years.  In this connection, it is noteworthy that, in petitioners' attachment to petitioners' 1996 Form 12153 and petitioners' attachment to petitioners' 1997 and 1999 Form 12153, as well as in various letters described above that petitioners sent to the IRS with respect to their taxable years 1996, 1997, and 1999, petitioners did not complain that they did not receive notices of deficiency with respect to 1996, 1997, and 1999.  Instead, they argued in those documents that they did not receive valid notices of deficiency for any of those years because the notices of deficiency that they received were not signed by the Commissioner of Internal Revenue (Commissioner) or a properly authorized delegate of the Commissioner.  Finally, we note that we did not find credible Mr. Frey's testimony that he did not receive notices of deficiency with respect to 1996, 1997, and 1999.  Such testimony is inconsistent with other testimony of Mr. Frey that he may have received such notices and is contrary to other evidence in the record.

record, we find that petitioners may not challenge the existence or the amount of petitioners' unpaid liability for 1996, petitioners' unpaid liability for 1997, and petitioners' unpaid liability for 1999.  See sec. 6330(c)(2)(B); Sego v. Commissioner, supra; Goza v. Commissioner, supra.

Where, as is the case here, the validity of the underlying tax liability for each of the years 1996, 1997, and 1999 is not properly placed at issue, the Court will review the determination of the Commissioner for abuse of discretion.  Sego v. Commissioner, supra; Goza v. Commissioner, supra.

We turn to the issues that petitioners raised in petitioners' attachment to their 1996 Form 12153, in petitioners' attachment to their 1997 and 1999 Form 12153, in the letters that petitioners sent to the IRS with respect to their taxable years 1996, 1997, and 1999, at their Appeals Office hearing, and in the petition and the exhibits attached to the petition, which we shall review for abuse of discretion.  We find petitioners' attachment to their 1996 Form 12153, petitioners' attachment to their 1997 and 1999 Form 12153, the various letters that petitioners sent to the IRS with respect to their taxable years 1996, 1997, and 1999, and the matters that petitioners raised at their Appeals Office hearing to be frivolous and/or groundless.[3]

---

[3]We also find petitioners' attachment to their 1996 Form 1040 and petitioners' attachment to their 1997 Form 1040A to be
                                                    (continued...)

In the Court's May 29, 2003 Order, we found that petitioners' petition and certain exhibits attached thereto contained statements, contentions, arguments, and questions that were frivolous and/or groundless. We conclude that the following allegations in petitioners' petition raise valid issues that we shall address: Petitioners' allegation that the Appeals Office improperly refused to allow them to make an audio recording of their Appeals Office hearing, as required by section 7521(a)(1), and petitioners' allegation that petitioners' unpaid liability for 1996 and petitioners' unpaid liability for 1997 were discharged in petitioners' bankruptcy proceeding.

We consider first petitioners' position that the refusal by the Appeals Office to permit them to make an audio recording of the Appeals Office hearing held on November 20, 2002, was improper under section 7521(a)(1). Throughout the period commencing with petitioners' sending to the IRS their 1996 Form 1040 reporting total income of $0 and total tax of $0 and ending with their filing briefs with the Court, petitioners have made statements, contentions, arguments, and requests and raised questions that the Court finds to be frivolous and/or groundless. Consequently, even though we held in Keene v. Commissioner, 121 T.C. 8 (2003), that section 7521(a)(1) requires the Appeals

---

³(...continued)
frivolous and/or groundless.

Office to allow a taxpayer to make an audio recording of an Appeals Office hearing held pursuant to section 6330(b), we conclude that (1) it is not necessary and will not be productive to remand this case to the Appeals Office for another hearing under section 6330(b) in order to allow petitioners to make such an audio recording, see Lunsford v. Commissioner, 117 T.C. 183, 189 (2001), and (2) it is not necessary or appropriate to reject respondent's determination to proceed with the collection action as determined in the notice of determination with respect to petitioners' taxable years 1996, 1997, and 1999, see id.[4]

We next consider petitioners' position that the U.S. Bankruptcy Court discharged petitioners' unpaid liability for 1996 and petitioners' unpaid liability for 1997.[5]  An individual debtor is not to be discharged in a bankruptcy proceeding from certain specified categories of debt.  11 U.S.C. sec. 523(a) (2000).  The first such category is described in pertinent part in 11 U.S.C. sec. 523(a)(1) as follows:

§ 523.  Exceptions to discharge

    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [title 11] does not discharge an individual debtor from any debt--

        (1) for a tax * * *--

---

[4]See Kemper v. Commissioner, T.C. Memo. 2003-195.

[5]Petitioners did not argue at their Appeals Office hearing that the U.S. Bankruptcy Court discharged petitioners' unpaid liability for 1999.

\*      \*      \*      \*      \*      \*      \*

(B) with respect to which a return, if required--

(i) was not filed; \* \* \*

In the instant case, respondent did not process and file as tax returns the 1996 Form 1040 and the 1997 Form 1040A which respondent received from petitioners and in which petitioners reported total income of $0 and total tax of $0. That was because respondent determined that those documents were frivolous.[6] An individual debtor is not discharged in a bankruptcy proceeding from a debt for tax with respect to which a return is not filed. 11 U.S.C. sec. 523(a)(1)(B)(i). On the record before us, we find that pursuant to 11 U.S.C. sec. 523(a)(1)(B)(i) the U.S. Bankruptcy Court did not discharge petitioners from their unpaid liability for 1996 and petitioners' unpaid liability for 1997.

Based upon our examination of the entire record before us, we find that respondent did not abuse respondent's discretion in determining to proceed with the collection action as determined in the notice of determination with respect to petitioners' taxable years 1996, 1997, and 1999.

Although respondent does not ask the Court to impose a

_____

[6]We have recently observed: "The majority of courts, including this Court, have held that, generally, a return that contains only zeros is not a valid return." Cabirac v. Commissioner, 120 T.C. 163, 169 (2003).

penalty on petitioners under section 6673(a)(1), the Court will sua sponte determine whether to impose such a penalty. Section 6673(a)(1) authorizes the Court to require a taxpayer to pay to the United States a penalty in an amount not to exceed $25,000 whenever it appears to the Court, inter alia, that a proceeding before it was instituted or maintained primarily for delay, sec. 6673(a)(1)(A), or that the taxpayers' position in such a proceeding is frivolous or groundless, sec. 6673(a)(1)(B).

In Pierson v. Commissioner, 115 T.C. 576, 581 (2000), we issued an unequivocal warning to taxpayers concerning the imposition of a penalty under section 6673(a)(1) on those taxpayers who abuse the protections afforded by sections 6320 and 6330 by instituting or maintaining actions under those sections primarily for delay or by taking frivolous or groundless positions in such actions. The Court's May 29, 2003 Order reminded petitioners about section 6673(a)(1). Before the trial in this case began, the Court again reminded petitioners about section 6673(a)(1) and indicated that if petitioners advanced frivolous and/or groundless arguments at trial, the Court would impose a penalty on them under that section. During the trial, upon questioning by the Court, Mr. Frey indicated that petitioners continue to adhere to the statements, contentions, arguments, requests, and questions set forth in petitioners' attachment to petitioners' 1996 Form 1040 and petitioners

attachment to petitioners' 1997 Form 1040A.

On the record before us, we find that petitioners have advanced, we believe primarily for delay, frivolous and/or groundless statements, contentions, arguments, requests, and questions with respect to their taxable years 1996, 1997, and 1999, thereby causing the Court to waste its limited resources in addressing such matters. As a result of petitioners' position and actions in the instant case with respect to those taxable years, we shall impose a penalty on them pursuant to section 6673(a)(1) in the amount of $4,000.

We have considered all of petitioners' statements, contentions, arguments, requests, and questions that are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.